## In re ASSOCIATED GAS & ELECTRIC CO.

District Court, S. D. New York.

April 18, 1947.

E. Robert Willcox, of New York City, for General Public Utilities Corporation.

Jack Principale, in pro per.

LEIBELL, District Judge.

On December 20, 1946, the claimant herein, Jack Principale, filed a notice of a hearing before a Referee in this matter upon a claim to participate under the plan of reorganization herein. He is the owner of certain 6% Convertible Obligations, Series A and No. 7 Dividend Series Preferred Stock of Ageco. He asserts that he is "an original holder," or a "statutory successor" of an original holder of these securities, and that as such he is entitled to participate in the distribution of stock of General Public Utilities Corporation, the name under which Ageco emerged from the reorganization proceedings herein. The plan of reorganization of the debtor Ageco was approved and confirmed by this Court by orders entered on September 13, 1944 D.C., 61 F. Supp. 11 and August 10, 1945 respectively. The order of approval was affirmed by the Circuit Court of Appeals on March 27, 1945. 2 Cir., 149 F.2d 996. The claim asserted herein is based upon an incorrect interpretation of Article II, paragraph 6, subdivision 8 of the Plan of Reorganization, which provides for the participation of such securities as are held by the claimant, in the following language:

"Such of the following securities of Ageco as were issued in exchange for the securities enumerated in Item 7 (CDCs) and as remain in the hands of Original Holders."

On January 13, 1947, a hearing on Principale's claim was held before Hon. John

E. Joyce, Referee, and on February 6, 1947, an order was entered by him disallowing the claim. On February 13, 1947, the claimant filed a petition for review of the Referee's order. A hearing was held thereon February 26, 1947, and briefs and affidavits were submitted to the Court. A further hearing was held April 17, 1947.

The term "Original Holder" as used in Article II, paragraph 6, subdivision 8 of the Plan of Reorganization dated June 14, 1943 as amended, is defined in the Glossary to the Plan (on page 14) as follows:

"Original Holders. Persons to whom Convertible Obligations of Ageco due 2002, 6%, 6–1/2% and 7% issues of Series A and 6% issue of Series B or Ageco preferred and preference stock were originally issued in exchange for Ageco Convertible Debenture Certificates, 6–1/2% Series B and C (Manila Series), 6% Series A, B, C, D, E, F, Series B of 1929, or 1931 Series, or their personal representatives, legatees or distributees, or statutory successors."

In the Report of the Trustees of the debtor, dated January 8, 1943 and filed pursuant to Section 167(5) of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 567(5), at page 11 in footnote 1, thereof the following language appears:

"The term 'original holders' means persons who still hold COs which they originally obtained in exchange for CDCs and includes personal representatives, legatees or distributees, or in the case of original corporate holders, their statutory successors."

The same language, in reference to the type of securities held by the claimant herein, appears in Paragraph II, subdivision 8 of the same report at page 33 thereof.

In an order classifying the securities in this proceeding dated August 13, 1943 the following language, with reference to the type of securities held by the claimant, Principale, appears:

"a. Holders of Ageco Convertible Obligations, Series A and B, due 2002 (excepting persons to whom such Ageco Convertible Obligations, Series A and B, were originally issued in exchange for Convertible Debenture Certificates, 6–1/2% Series B and C [Manila Series], 6% Series A, B, C, D, E, B of 1929, and 1931 Series, and 6% Convertible Debenture Obligations, Series F, and who still hold the Convertible Obligations issued to them or their personal representatives, legatees, or distributees, or statutory successors), be and hereby are classified as holders of securities junior and subordinate, both as to principal and interest, to the general creditors of Ageco, except holders of obligations convertible at Ageco's option into stock."

In an attorney's memorandum submitted to the Court in connection with the confirmation of Conclusion of Law No. 5 of the Report of the Special Master in the proceedings which were had in this matter to hear and report as to the validity, priorities and proper division into classes of the various claims of security holders, there appears the following recommendations for the purposes of amplification:

"This shall not apply to personal representatives, legatees, distributees or in case of original corporate holders, their statutory successors or persons who obtained the same by gift * * *."

Further reference to this question is found in the opinion of the Court confirming the conclusion of law referred to above. In re Associated Gas & Electric Co., D.C.S. D.N.Y., 1943, 53 F.Supp. 107, at page 114, the Court said:

"Some question has arisen as to the meaning of conclusion of law No. 5. I believe that it does not cover an administrator, executor, or other legal successor by operation of law to all the rights and claims of the original holders. It seems to me that it does cover, however, any person who acquired COAB's by purchase or gift from an original holder * * *. The decree to be submitted confirming the Special Master's report should clarify conclusion of law No. 5 to the extent above indicated."

In Elias v. Clarke, 2 Cir., 1944, 143 F.2d 640, which was an appeal from the order entered on the above decision, the appellate court noted the distinction made by the District Court, and affirmed. Affirmance of the same proposition was once more voiced by the Circuit Court of Appeals in its opin-

ion approving the plan of reorganization, In re Associated Gas & Electric Co., 2 Cir., 149 F.2d 996, where the Court said at page 1007:

"Original holders of COs received their bonds in exchange for CDCs, and are granted participation in the assets on the theory that they may have a claim for rescission or damages based on fraud or misrepresentation in connection with the exchange. The statement in the case of Elias v. Clarke that under the New York law 'a claim for fraud or misrepresentation in connection with an obligation evidencing a debt * * * does not pass merely with the transfer of the obligation itself, where there are lacking special words of assignment * * *,' forecloses Non-original holders of COs, of whatever series, from asserting any such claim."

The referee in his order expunging the claim herein dated February 6, 1947, made the following findings of fact among others:

"3. The claimant acquired all the securities upon which he founds his claim, by purchase in the open market in or during and subsequent to the year 1939.

"4. None of the securities which are the subject of the notice of this hearing was acquired by the claimant in exchange for any of the securities of the Debtor listed in subdivision 7 of paragraph 6 of the Plan of Reorganization."

These findings are substantiated by the testimony taken before the referee and by the affidavit submitted by General Public Utilities Corporation successor to the debtor, dated March 20, 1947.

Upon the hearing the claimant testified that he was the holder of the securities set forth above by assignment and such assignment was evidenced by the form on the reverse side of the securities which read:

"For value received the undersigned does hereby sell, assign and transfer unto ——— the within ——— of Associated Gas and Electric Company and does hereby constitute and appoint Jack Principale attorney to transfer this certificate on the books of Associated Gas and Electric Company with full power of substitution in the premises."

The securities were obtained by him, according to his testimony, for a valuable consideration from brokers and holders. He was not the holder of any CDCs and did not acquire any of his present securities by exchange for CDCs. He was, as he testified, a purchaser of the securities in the market. The affidavit submitted by the attorney for General Public Utilities Corporation shows that the records of the debtor reveal that the securities held by the claimant were originally held by persons several times removed from the claimant by intervening holders.

It is entirely clear that the claimant is not an original holder of these securities who had received them in exchange for other securities of the debtor. He makes no claim as a legatee or distributee and it is obvious that he is not within that class. However, he does urge that he is a "statutory successor" on the basis, it seems, that he received the securities by assignment and that by virtue of a statute (he says, the Negotiable Instruments Law of New York, Consol.Laws, c. 38) he succeeded to the rights of the original holders. The claimant is not a lawyer and is appearing herein pro se. He misconceives the meaning of the words "statutory successor" as they were used in the plan.

"Statutory successor" is a phrase of art and as such is used to designate "the person to whom the assets of a corporation pass upon dissolution." Words & Phrases, Perm.Ed., Vol. 40, page 111. See also "Successor," Bouvier's Law Dictionary, Rawle's Third Revision, p. 3176. An example of such a successor is set forth in the Restatement, Conflict of Laws, § 161 (and comment a) as follows:

"If a statute of the state of incorporation which is in force at the time of the dissolution of a corporation provides that all its assets shall, upon dissolution, pass to a person designated in the statute, the right of such person to the personal property, wherever situated and whether tangible or intangible will be recognized and given effect by other states and the designated person can bring suit in any state upon claims due to the corporation."

"Comment:

"a. Statutory successor. In the Restatement of this Subject the person to whom the assets of a corporation pass upon dis-

solution, as stated in this Section, is called the statutory successor of the corporation."

A statutory successor, it appears, is one standing in relation to the original corporate holder in the same manner as a distributee stands in relation to a deceased individual original holder.

Principale, the claimant herein is not such a person who is a "statutory successor." He is, by his own admission, a purchaser in the market and a comparatively recent one. It was just such a security holder who was expressly excluded from participation under the Plan. In re Associated Gas & Electric Co., D.C., 53 F. Supp. 107; Elias v. Clarke, 2 Cir., 143 F. 2d 640; and In re Associated Gas & Electric Co., 2 Cir., 149 F.2d 996.

The report of the Referee expunging the claim of Jack Principale and denying his application for discovery of the names of the original holders of his certificates is therefore confirmed.

Settle order on notice.